036957/01245/MHW/JAP

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ALNORAINDUS BURTON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  1:12-cv-08443 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| DR. PARTHA GHOSH and WEXFORD | ) | |
| HEALTH SOURCES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' L.R. 56.1 STATEMENT OF FACTS IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

Defendants, PARTHASARATHI GHOSH, (hereinafter as "Dr. Ghosh"), and WEXFORD

HEALTH SOURCES, INC. (hereinafter as "Wexford"), by their attorneys, Joseph A. Panatera and

Matthew H. Weller of CASSIDAY SCHADE LLP, for Defendants' Statement of Facts pursuant to

L.R. 56.1,  state as follows:

### STATEMENT OF FACTS

#### A.    Pleadings and Procedural History

1.    On February 17, 2011, Plaintiff, Alnoraindus Burton (hereinafter as "Mr. Burton"

or "Plaintiff"), filed a pro se complaint against multiple Defendants, including Dr. Ghosh, in the

U.S. District Court for the Northern District of Illinois under case number 11 cv 1130, claiming

deliberate indifference related to medical treatment following an alleged knee injury in February

of 2009. *Burton v. Mahone et al.,* 11-cv-1130, CM/ECF No. 1, (N.D. Ill. Feb. 17, 2011).

2.    On October 19, 2012, Plaintiff, through appointed counsel, filed a Complaint in

the current case. *Dkt. 1.* The Complaint alleges deliberate indifference and retaliation against Dr.

Ghosh and Wexford, related to medical treatment at Stateville Correctional Center (hereinafter as

"Stateville") for an alleged knee injury sustained in February of 2009, including treatment following an arthroscopic knee surgery on October 19, 2010. *See Dkt. 1.*

3. On January 19, 2018, Plaintiff filed an Amended Complaint in this matter. *Dkt. 107.* Plaintiff's Amended Complaint alleges deliberate indifference and retaliation against Dr. Ghosh and Wexford, related to medical treatment at Stateville for an alleged knee injury sustained in February of 2009, including treatment following an arthroscopic knee surgery on October 19, 2010. *See Dkt. 107.*[1]

4. Plaintiff believes Dr. Ghosh first became deliberately indifferent to Plaintiff's serious medical needs when Dr. Ghosh moved him to an allegedly filthy cell after his October 19, 2010 surgery. *See Deposition testimony of Plaintiff, Alnoraindus Burton, attached hereto as **Exhibit A**,* pp. 106:13-24; 107:1-7.

5. Plaintiff's named Wexford as a defendant in this case because Plaintiff believes Wexford is responsible for Dr. Ghosh's actions. *Ex. A,* p. 99:5-11. Plaintiff cannot point to any documentation regarding how Wexford operates its budget within the Illinois Department of Corrections (hereinafter as "IDOC"). *Ex. A,* p. 101:18-21.

6. Plaintiff alleges that he suffered severe pain after his arthroscopic knee surgery and that his pain continued to worsen each day following surgery. *Dkt. 107,* ¶¶ 21, 23, 25, 26, 29, 32, and 34. Plaintiff also alleges that he suffered from decreased range of motion of his knee. *Dkt. 107* ¶¶ 30-32.

**B.** **Medical Treatment**

7. On November 4, 2009, Plaintiff was transferred from Pontiac Correctional Center to Stateville. *Dkt. 1; Ex. A,* p. 16:22-24. Dr. Ghosh did not provide any treatment to Plaintiff at Pontiac Correctional Center. *Ex. A,* pp. 18:17-24; 19:1-7.

---

[1] Defendants' motion to dismiss this Amended Complaint based on res judicata was granted. *Dkt. 122.* The 7th Circuit Court of Appeals reversed the decision and remanded the matter back to this Court. *Dkt. 163.*

8.      On March 13, 2010, Plaintiff was evaluated by a medical provider at Stateville related to Plaintiff's complaints of right knee pain. The medical provider ordered an x-ray and prescribed the mediation, Indocin, a non-steroidal anti-inflammatory drug ("NSAID"). *See Dkts. 171 at ¶ 7; See relevant portions of Plaintiff's medical records from Stateville attached as* **_Exhibit B_**, p. Ghosh000189

9.      On March 17, 2010, Plaintiff underwent an x-ray at Stateville. The x-ray was negative. *Ex. B,* p. Ghosh000444. On March 22, 2010, Dr. Ghosh reviewed the x-ray report. *Ex. B,* p. 000189.

10.     On March 24, 2010, Dr. Ghosh for the first time evaluated Plaintiff related to his right knee complaints and suspected a right knee ACL tear, ordered an MRI, prescribed a muscle relaxer (Flexeril), and a pain medication (Tramadol). *Ex. A,* pp. 25:7-10; *Ex. B,* p. Ghosh000190.

11.     On May 27, 2010, the MRI of Plaintiff's right knee was performed at the University of Illinois Medical Center (hereinafter as "UIC"). *Ex. A,* p. 38:5-11; *Ex. B,* pp. Ghosh000300-301. The MRI impressions were mild tricompartmental osteoarthritis, intact anterior cruciate ligament, and small inner margin lateral meniscus tear. *Ex. B,* pp. Ghosh000300-301.

12.     On June 23, 2010, Dr. Ghosh reviewed the MRI results and scheduled an appointment to discuss the results with Plaintiff on July 1, 2010. *Ex. B,* pp. Ghosh000193-194. On July 1, 2010, Dr. Ghosh recommended a referral for an orthopedic consult and prescribed Motrin 400 mg tablets, 1-2 every 8 hours for 3 months. *Ex. B,* pp. Ghosh000194; Ghosh000421; Ghosh000390.

13.     On July 19, 2010, Dr. Ghosh in collegial review with Dr. Agrawal approved the referral for an orthopedic consultation. *Ex.* at UIC. *Ex. B,* pp. Ghosh000194, Ghosh000302. UIC scheduled the orthopedic consult for October 4, 2010. *Ex. B,* p. Ghosh000303. Dr. Ghosh would

consult with utilization management of Wexford through collegial review for approval of sending an inmate to an outside facility. *Ex. D,* pp. 23:22-24; 24:1-6. 99.9% of the time utilization management would approve Dr. Ghosh's requests for outside medical visits for an inmate. *Ex.* D, p. 11:6-10.

14.     On October 4, 2010, orthopedic surgeon, Dr. Chmell, at UIC evaluated Plaintiff and scheduled an arthroscopic knee surgery for October 19, 2010. *Ex. B,* pp. Ghosh000303, Ghosh000306; *See Plaintiff's relevant records from UIC attached as **Exhibit C**,* p. UIC0000011.

15.     On October 6, 2010, Dr. Ghosh prepared a referral form for the right knee meniscus surgery to be performed at UIC on October 19, 2010. *Ex. B,* p. Ghosh000310. On October 11, 2010, Dr. Ghosh at collegial review with Dr. Agrawal approved the right knee surgery at UIC on October 19, 2010 and a follow-up at UIC on October 25, 2010. *Ex. B,* p. Ghosh000305.

16.     On October 19, 2010, Dr. Chmell performed the right knee meniscus surgery at UIC. *Ex. B,* pp. Ghosh000307; Ghosh000310; *Ex. C,* pp. UIC000001-3. Dr. Chmell discharged Plaintiff and recommended Norco 10 mg tablets every 6 hours, return to the clinic in 1 week, shower after 3 days, to ice the knee as needed (PRN), and physical therapy for the right leg. *Ex. B,* pp. Ghosh000309-310.

17.     On October 19, 2010, Plaintiff was returned to Stateville after undergoing the right meniscus arthroscopic surgery. *Ex. B,* p. Ghosh000213. Upon Plaintiff's return to Stateville, Plaintiff was evaluated by a nurse at 3:50 p.m. after being admitted to the infirmary. *Ex. B,* p. Ghosh000213. The nurse's note does not document that Plaintiff complained about the infirmary cell being dirty or unsanitary. *Ex. B,* p. Ghosh000213.

18.     On October 19, 2010, at 3:55 p.m., Dr. Ghosh evaluated Plaintiff, prescribed the medication Tylenol #3 with codeine every six hours, ice as needed (PRN), admission to the

infirmary for 23 hour observation, and a follow-up with the orthopedic surgeon in 1 week on October 25, 2010. *Ex. B,* pp. Ghosh00213-214; Ghosh000418. Dr. Ghosh prescribed Tylenol #3 for the first 23 hours and would then reassess to determine what to do. *See Dr. Ghosh deposition testimony attached as **Exhibit D**,* p. 31:3-12.

19.     Norco is Tylenol with hydrocodone. *Ex. D,* p. 79:3-11. Tylenol #3 is Tylenol with codeine. *Ex. D,* p. 79:3-11. Their effectiveness is essentially the same. *Ex. D,* p. 79:3-11.

20.     On October 19, 2010, at 5:00 p.m., a nurse noted that Plaintiff was given 2 tablets of Tylenol #3, which were taken. *Ex. A,* p. 63:10-15; *Ex. B,* p. Ghosh000214. This note does not document that Plaintiff complained about the infirmary cell being dirty or unsanitary. *Ex. B,* p. Ghosh000214.

21.     Dr. Ghosh testified that Plaintiff did not complain to Dr. Ghosh that the cell he was placed in was dirty. *Ex. D,* p. 32:17-23.

22.     On October 20, 2010, at 3:30 a.m. a nurse evaluated Plaintiff. *Ex. B,* p. Ghosh000214. The nurse noted that Plaintiff was given pain meds at 12:25 a.m. and slept good. *Ex. B,* p. Ghosh000214. This note does not document that Plaintiff complained about the infirmary cell being dirty or unsanitary. *Ex. B,* p. Ghosh000214.

23.     On October 20, 2010, Dr. Ghosh evaluated Plaintiff and noted that Plaintiff's subjective complaints were that the pain and swelling of Plaintiff's right knee were considerably less. *Ex. B,* p. Ghosh000215; *Ex. D,* p. 36:5-14. Dr. Ghosh discharged Plaintiff from the infirmary, prescribed a low bunk and low gallery permit, prescribed Motrin 400 mg tablets 1-2 every 8 hours as needed (PRN) for 30 days, and referred Plaintiff to physical therapy. *Ex. B,* p. Ghosh000215; Ghosh000420; *Ex. D,* pp. 36:15-18; 37:3-10.

24.     Plaintiff would have been given a carton of Motrin when he was discharged to the cell house. *Ex. D,* p. 44:20-24. In addition, a med tech can hand over medication like Tylenol or

Motrin right away and then arrange for sick call subsequently. *Ex. D,* p. 85:4-10. Plaintiff never told Dr. Ghosh that he was allergic to NSAIDs. *Ex D,* p. 45:2-5.

25.     Dr. Ghosh, based on his evaluation on October 20, 2010, did not find a reason to continue the Tylenol #3. *Ex. D,* p. 81:1-10. If Plaintiff had increased swelling or something else was going on with his knee, then Dr. Ghosh would have kept him in the infirmary for a longer period of time and would have given him Tylenol #3, but there was no need to give him Tylenol #3. *Ex. D,* p. 79:3-11. Dr. Ghosh did not discharge Plaintiff to general population because of any comments about the sanitary condition of his cell. *Ex. D,* p. 89:5-15.

26.     On October 20, 2010, a nurse evaluated Plaintiff and noted that Plaintiff had no complaints of pain or discomfort. *Ex. B,* p. Ghosh000216. Plaintiff was also provided a pair of crutches to get back to his cell. *Ex. A,* p. 82:20-22.

27.     On October 25, 2010, Plaintiff returned to UIC for his follow-up visit with Dr. Chmell. *Ex. B,* pp. Ghosh000311-313; *Ex. C,* pp. UIC000008-9. The note indicates that Plaintiff was doing well, but has a little bit of knee stiffness and some pain. *Ex. C,* pp. UIC000008-9. Plaintiff was in no apparent distress. *Ex. C,* pp. UIC000008-9. Dr. Chmell recommended physical therapy and nonsteroidal anti-inflammatory drugs for pain and inflammation as needed and for Plaintiff to follow-up in 3-4 months. *Ex. B,* p. Ghosh000313; *Ex. C,* pp. UIC000008-9.

28.     On December 2, 2010, Plaintiff for the first time told Dr. Ghosh that he could not take NSAIDs. *Ex. B,* p. Ghosh000223; *Ex. D,* p. 52:1-20. At that time, Dr. Ghosh changed Plaintiff's pain medication to Tylenol. *Ex. B,* p. Ghosh000223; *Ex. D,* p. 53:2-3. Tylenol is not an NSAID, but is a different type of pain medication. *Ex. D,* p. 72:1-4. Tylenol is an alternative to Motrin for pain relief. *Dr. Cannestra Deposition Testimony attached as **Exhibit E***, p. 79:13-15.

29.     Around January or February of 2011, Plaintiff was able to start walking around without crutches. *Ex. A,* p. 91:1-6.

30.     On February 9, 2011, Dr. Ghosh examined Plaintiff's knee and there was no effusion or swelling. *Ex. B,* pp. Ghosh000231-232; *Ex. D,* pp. 67:17-24; 17:1-6. This was the last time Dr. Ghosh had any interaction with Plaintiff. *Ex. D,* p. 70:17-19.

31.     After the October 2010 knee surgery, Plaintiff never developed an infection. *Ex. A,* p. 52:11-13. He did not get an infection or any type of injury from being in an allegedly dirty cell. *Ex. A,* p. 83:8-12.

32.     On March 22, 2011, Plaintiff refused sick call. *Ex. B,* p. Ghosh000246; *Ex. D,* p. 69:11-13.

33.     On March 31, 2011, Plaintiff was evaluated by a physical therapist at Stateville and started physical therapy. *Ex. A,* pp. 83:17-24; 84:1-2; *Ex. B,* pp. Ghosh000250-251. Plaintiff had physical therapy from March 31, 2011 to August 11, 2011. *Ex. A,* p. 88:7-15.

34.     Dr. Ghosh was not in charge of how physical therapy was administered at Stateville. *Ex. D,* p. 86:8-11. How an inmate is scheduled for physical therapy, how the physical therapy is done, and the amount of time for physical therapy is all determined by the physical therapist. *Ex. D,* pp. 86:22-24; 87:1-3.

35.     At the end of March 2011, Dr. Ghosh retired. *Ex. D,* pp. 9:18-23; 54:7-8. During the time that Dr. Ghosh provided treatment to Plaintiff, Dr. Ghosh acted as a reasonably qualified physician in providing care and treatment to Plaintiff. *Ex. D,* p. 89:1-4.

36.     On November 4, 2011, Plaintiff returned to Pontiac Correctional Center. *Ex. A,* p. 98:14-17.

37.     On November 21, 2011, Plaintiff returned to see the surgeon at UIC regarding his knee. *Ex A,* p. 96:17-20; *Ex. C,* pp. 000006-7. Dr. Chmell's note indicates that Plaintiff was doing well and that his pain in the right knee was largely improved since the surgery. *Ex. C,* pp. 000006-7. The note indicates that Plaintiff complained of a little bit of medial-sided pain with

stairs. *Ex. C,* pp. 000006-7. Plaintiff was in no apparent distress and on examination Plaintiff was non-tender to palpation throughout the knee and had full range of motion from 0 degrees of extension to about 120 degrees of flexion actively. *Ex. C,* pp. 000006-7. In addition, his knee was stable to varus and valgus stress. *Ex. C,* pp. 000006-7. Overall, Dr. Chmell noted that Plaintiff had done well postoperatively, prescribed a Flector Patch for pain, and recommended that Plaintiff follow-up as needed. *Ex. B,* p. Ghosh000315; *Ex. C,* pp. 000006-7.

38.     Dr. Ghosh is a medical doctor and was an attending physician at Rush-Cook County Hospital, which is now called Stroger Hospital, until he retired in 2003. *Ex. D,* p. 7:2-8. Dr. Ghosh then became the Medical Director at Stateville through the Department of Correction. *Ex. D,* p. 7:8-10. Wexford was not the vendor for the Department of Correction at that time. *Ex. D,* p. 7:10-13. Wexford became the vendor in 2004. *Ex. D,* pp. 7:22-24; 8:1-3.

**C.     Plaintiff's Retained Expert – Dr. Cannestra**

39.     Plaintiff's retained expert, Dr. Cannestra, provided opinions related to Dr. Ghosh only. *Ex. E,* p. 42:14-17. Dr. Cannestra did not provide any opinions related to Wexford. *Ex. E,* p. 43:2-6. All of Dr. Cannestra's opinions relate to Dr. Ghosh's treatment of Plaintiff after his right knee arthroscopy on October 19, 2010 until March 31, 2011. *Ex. E,* pp. 44:8-12; 45:6-10; 48:15-19.

40.     Dr. Cannestra agreed that physicians can disagree about the type and amount of pain medication to provide a patient that is complaining of pain. *Ex. E,* p. 50:2-6. In addition, a mere disagreement regarding the amount and type of pain medication to provide a specific patient is not a deviation from the standard of care. *Ex. E,* p. 50:14-18.

41.     Physicians rely on a patient's complaints of pain as well as any physical findings to determine the veracity of a patient's pain complaints. *Ex. E,* p. 53:3-7. A physician who is

with a patient and physically examining a patient is in the best position to determine the patient's pain level based on the patient's complaints. *Ex. E,* p. 53:8-13.

42.     Dr. Cannestra agreed that a patient does not require more pain medication to treat the pain following a right knee arthroscopy if the current amount of pain medication he is taking reduces his pain to a level of zero. *Ex. E,* p. 55:7-12. Also, pain medication that provides 50% relief is known as effective treatment. *Ex. E,* p. 55:13-17. Dr. Cannestra did not provide an opinion regarding how much Plaintiff's pain would have been reduced, if he were provided Norco instead of Tylenol #3. *Ex. E,* p. 58:13-20.

43.     Dr. Cannestra agreed that on October 19, 2010, Dr. Ghosh was qualified to treat a patient's complaints of pain. *Ex. E,* p. 51:18-23. Dr. Cannestra has had some patients that did not have any pain in their knee after a knee arthroscopy. *Ex. E,* p. 52:11-14.

44.     Dr. Cannestra testified that a physician should provide the appropriate pain medication for a patient's symptoms after a knee arthroscopy, which could include giving more or less than the classic and routine Norco five milligram tablets. *Ex. E,* p. 64:3-15. Dr. Cannestra also agreed that he does not allow patients to prescribe themselves pain medication. *Ex E,* p. 71:10-13.

45.     Dr. Cannestra does not provide any testimony regarding a deviation from the standard of care related to Plaintiff's physical therapy after his right knee arthroscopy. *Ex. E,* p. 75:5-10. Dr. Cannestra also has no opinion regarding any long term effects of Dr. Ghosh's alleged inadequate and insufficient postoperative treatment of Plaintiff's alleged pain. *Ex. E,* p. 75:12-16.

**D.      Defendants' Retained Expert – Dr. Prodromos**

46.     Defendants' retained expert, Dr. Prodromos, is a board certified orthopedic surgeon. *Dr. Prodromos deposition testimony attached as **Exhibit F**,* p. 10:5-7. Dr. Prodromos

9

testified that Dr. Ghosh complied with the standard of care regarding the treatment provided to Plaintiff subsequent to the procedure performed at UIC on October 19, 2020. *Ex. F,* p. 41:18-22. Dr. Ghosh also testified that he acted as a reasonably qualified physician when providing care and treatment to Plaintiff. *Ex. D,* p. 89:1-4.

47.     Dr. Prodromos testified that a 5 milligram hydrocodone tablet (Vicodin) is the same or has the same equianalgesic opioid effect as a single Tylenol #3. *Ex. F,* pp. 48:18-22. Two Tylenol #3 would be the same as 10 milligrams of hydrocodone (Norco). *Ex. F,* p. 48:22-24; 97:1-6. Two Tylenol #3 is appropriate to treat moderate to severe pain. *Ex. F,* p. 106:2-5.

48.     Dr. Prodromos testified that Tylenol #3 with codeine was an appropriate substitute for Norco in treating Plaintiff for any acute pain he may have been experiencing immediately following the October 19, 2010 arthroscopic knee surgery. *Ex. F,* p. 42:4-8.

49.     Dr. Prodromos testified that the only causes of pain Plaintiff could have experienced from the knee procedure on October 19, 2010, was the insertion of the arthroscope itself and the introduction of fluid for visualization. *Ex. F,* p. 77:1-19. None of the other parts of the operation could have caused pain including, shaving articular cartilage, shaving the central border of a meniscus, and removing a loose body. *Ex. F,* pp. 77:23-24; 78:1-6. Shaving the cartilage is 100% pain free because there are no nerve endings. *Ex. F,* pp. 47:5-6; 73:3-6. In addition, the meniscus, for the most part, has no nerve endings, and the area where this procedure was performed there are no nerve endings on the surface of it, so brushing against it with the scope would not be problem. *Ex. F,* pp. 46:19; 73:22-24; 74:1-8.

50.     Dr. Prodromos testified that Dr. Ghosh's substitution of Motrin 400 mg for Tylenol #3 was an appropriate downward modification of Plaintiff's pain medication. *Ex. F,* p. 111:13-22. Two Motrin (ibuprofen) 400 mg tablets three times per day, or 2400 mg of Motrin would be equivalent to 10 mg of hydrocodone. *Ex. F,* p. 116:16-21.

51.      Dr. Prodromos testified that the arthroscopic knee surgery that Plaintiff underwent was a minimally invasive procedure and could not be attributed to causing Plaintiff severe pain. *Ex. F,* p. 148:3-23.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: /s/Joseph A. Panatera            
    One of the Attorneys for Defendants, PARTHASARATHI GHOSH, M.D., and WEXFORD HEALTH SOURCES, INC.

Joseph A. Panatera/ARDC #6288487
Matthew H. Weller/ARDC #6278685
CASSIDAY SCHADE LLP
222 West Adams, Suite 2900
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 – Fax
jpanatera@cassiday.com
mweller@cassiday.com

11

## LIST OF EXHIBITS

Exhibit A - Plaintiff, Alnoraindus Burton, deposition testimony

Exhibit B – Plaintiff's relevant medical records from Stateville Correctional Center

Exhibit C – Plaintiff's relevant medical records from UIC

Exhibit D – Dr. Ghosh deposition testimony

Exhibit E – Dr. Cannestra deposition testimony

Exhibit F – Dr. Prodromos deposition testimony